HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATIONAL FOOTBALL SCOUTING, INC., <br><br> Plaintiff, <br><br> v. <br><br> ROB RANG, an individual; and THE SPORTS XCHANGE, INC., a California corporation, <br><br> Defendant. | CASE NO. 3:11-CV-5762-RBL <br><br> ORDER <br><br> [DKT. #26] |

THIS MATTER is before the Court on Defendants Sports Xchange and Rob Rang's Motion to Compel [Dkt. #26]. Plaintiff National Football Scouting's (NFS) sole purpose is to produce Scouting Reports for its shareholders—nineteen National Football League Clubs. The Reports contain ratings and grades of draft-eligible football players in order to give the NFL Clubs a competitive advantage in the NFL Draft. NFS has taken steps to protect the content of its Scouting Reports. For example, a written agreement prohibits the Clubs from disseminating the information contained in the report, and NFS copyrights the unpublished Reports.

Defendant Robert Rang is a part-time sports reporter. He published eight articles on Defendant Sports Xchange's website that contained the NFS player grade for several players. As

ORDER - 1

a result, NFS sued Rang and Sports Xchange for copyright infringement and misappropriation of trade secrets. One of the Defendants' early discovery requests sought the production of all of the copyrighted documents that the Defendants allegedly infringed. The parties agreed on a protective order but were still unable to agree on the scope of discovery with respect to the NFS Scouting Reports.

Defendants now ask the Court to compel NFS to produce the entire NFS Scouting Reports. NFS objects, arguing that (1) the Reports are not relevant, are not necessary for the defendants to present their arguments, and create an undue burden for NFS; and (2) the protective order does not adequately protect NFS's confidentiality and trade secrets. Defendants respond that (1) NFS did not preserve its objections, (2) the Reports are relevant, and (3) the protective order adequately protect NFS. For the reasons stated below, Defendants' Motion to Compel is GRANTED in part. Defendants' request for attorney's fees is DENIED.

## I. BACKGROUND

Plaintiff National Football Scouting (NFS) is a scouting organization whose sole purpose is to provide Scouting Reports to its shareholders—nineteen different National Football League Clubs. The Reports include multiple categories of information on each draft-eligible player, including height, weight, jersey number, school, medical information, and social security number.[1] NFS then assigns ratings and grades to the players for the upcoming draft. (Compl. at 4.) According to NFS, scouts travel the country to evaluate college talent and to discover player information for the Scouting Reports. NFS then organizes the information into the Reports. NFS contends that the Reports are "critical to [the shareholder NFL Clubs'] respective determinations of which college athletes to select in the next NFL draft." (*Id*.) Because they are

---

[1] It appears that players voluntarily provide this information to NFS.

1  so critical, the NFL Clubs "pay significant amounts of money to obtain this competitive

2  advantage to the exclusion of those NFL teams that choose not to invest in NFS." (*Id.*)

3        NFS claims that it "takes every reasonable step" to protect the confidentiality of the

4  Reports. NFS explains that each NFL Club signs a confidentiality agreement, all its own

5  employees sign a confidentiality agreement, and the company that provides technology

6  assistance signs a confidentiality agreement. (Compl. at 3–4.) NFS claims that it registered the

7  entire 2010 and 2011 Scouting Reports with the United States Copyright Office as unpublished

8  works. (Compl. at 4–5.) NFS claims to purposely register the Reports as unpublished works so

9  that it is not required to submit them to the Copyright Office, which further protects the secrecy

10  of the information.

11        During 2010–2011, Defendant Rob Rang published eight articles on Defendant Sports

12  Xchange's website about players eligible for the upcoming draft. (Compl. at 6–8.) These

13  articles either reference the NFS player grades of certain players or allude to a player's NFS rank

14  among other players. (*Id.*) NFS wrote a series of letters to the Defendants demanding that they

15  cease and desists from writing about NFS's confidential and proprietary information. (Answer at

16  3.) NFS sent its last letter in July 2011. (*Id.*) The Defendants contend that their use of the

17  grades was only a small part of each article, and that Rang "transformed cold, numerical

18  rankings into vividly descriptive narratives." (Mot. to Compel at 8.)

19        In September, NFS sued Rang and Sports Xchange for copyright infringement and

20  misappropriation of trade secrets. (Compl.) In February 2012, Defendants sent eleven requests

21  for production, including a request for "all of [the] copyrighted works that [NFS] claims any

22  defendant has infringed." (Hade Decl., Ex. A, at 8.) NFS response cited its general objections,

23  but stated, "Notwithstanding these objections, if the parties can agree on a suitable protective

24

order, NFS will produce responsive documents at that time." (*Id.*) The general objections included objections to relevance and undue burden. (*Id.* at 2.)

In order to facilitate production, the parties entered into a protective order in early August. (Dkt. #21.) Soon after, Defendants attempted to gain access to the Scouting Reports, but NFS informed them that it interpreted the request as only requiring the individual reports of the players mentioned in Rang's article. (Mot. to Compel at 4.) In order to compromise, the Defendants agreed to the limit. (*Id.*) At the end of August, NFS produced a highly redacted version of the Scouting Report. The Reports included only the players mentioned in Rang's articles, and NFS redacted most of the information relating to those players—including NFS's player grade. (*Id.*)

Defendants promptly informed NFS that the discovery was inadequate. (*Id.*) Counsel met and conferred on September 7th but did not reach an agreement. (*Id.*)[2] Defendants now seek an order for the production of the entire, unredacted Scouting Reports. Shortly after Defendants filed this motion, NFS agreed to provide the unredacted portions of the Reports for the players discussed in Rang's articles in an attempt to compromise. Defendants rejected the offer, stating that they would only compromise if NFS paid Defendants' attorney's fees. (*Id.*)

## II.  DISCUSSION

Under Federal Rule of Civil Procedure 26(b), litigants may obtain discovery regarding "any non privileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). Discovery is broad in scope and biased toward discovery. Therefore, discovery

---

[2] NFS argues that the parties did not meet and confer as required by Rule 37. (Opp. at 2.) NFS claims that the Defendants only advised them that they were "considering" filing a motion to compel—they did not state that they had already decided to do so. (*Id.* at 3.) However, the requirement to meet and confer has been satisfied.

requests need only be "reasonably calculated to lead to the discovery of admissible evidence." *Id.* District courts enjoy broad discretion to determine relevancy for discovery purposes and to limit discovery to prevent its abuse. *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002).

Defendants argue that NFS's general objections are not adequate to preserve a relevance or undue burden objection. NFS argues that this district has never held that such an objection is improper. (Opp. at 6.) The reason that this district has not formally opined on the adequacy of general objections is that the court's prefer to resolve issues on the merits, not on the sufficiency of how party's objected. In this case, both parties seemed to misunderstand the nature of the request from the beginning. The Court cannot say that NFS would not have objected on relevance and undue burden grounds if it had known Defendants sought the entire report, as opposed to just certain portions. The Court will consider the objections on the merits.

NFS argues that other alternatives obviate the need for producing the Reports. Specifically, NFS believes that Defendants can argue a Fair Use defense without resort to the Scouting Reports.[3] The Defendants argue that this is not actually a relevance objection, but one that expresses NFS's belief that the Report is not the only evidence. Admittedly , it is hard to imagine a situation where a copyrighted work is irrelevant to a copyright infringement action. The Scouting Reports are relevant to the case.

Next, NFS argues that producing the Report is unduly burdensome because it contains highly personal information on thousands of players who are not a subject to this litigation that NFS would need to redact. This argument has merit. The Report contains player grades for over a thousand players, far more than the subject of this litigation. NFS does not have to produce the

---

[3] NFS points out that the Defendants did exactly that in their current Summary Judgment Motion [Dkt. #31].

entire Report. But the version of the Scouting Report that NFS provided the Defendants is inadequate. NFS must produce unredacted portions of the Scouting Report that pertain to the players who were the subject of Rang's articles. NFS's production must show all of the categories of information that NFS compiles, though it may redact some of the highly personal information.[4]

Finally, NFS argues that the protective order does not adequately protect their interests. As the Defendants point out, NFS required the Defendants to enter into the protective order. After entering into the protective order, NFS still limited the amount of information it gave the Defendants. In fact, Defendants likely could have gotten more information from an Internet search than they received from the redacted Report. The NFL Drafts related to both Reports have already occurred, and the Court has limited the production to the players referenced in Defendants' articles. NFS's interests have been appropriately protected.

The Motion to Compel is GRANTED [Dkt. #26] in part. NFS must produce the unredacted portions of the Scouting Report that pertain to the players who were the subject of the Rang's articles on Sports Xchange. The request for attorney's fees is DENIED.

IT IS SO ORDERED.

Dated this 22nd day of October, 2012.

                                                          Ronald B. Leighton
                                                          United States District Judge

---

[4] For example, the players' actual social security numbers may be redacted. But the Report should show that NFS compiled the social security numbers and that the numbers were subsequently redacted. NFS should not redact the player's grade, height, weight, or other similar, non-confidential information.